UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:   9/4/2018
```

Mosso-Salazar et al.,

                              Plaintiffs,

              -against-

New Lexington Corp. et al.,

                              Defendants.

1:18-cv-02505 (GBD) (SDA)

REPORT AND RECOMMENDATION

STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.

TO THE HONORABLE GEORGE B. DANIELS, UNITED STATES DISTRICT JUDGE:

By Order dated June 27, 2018, the Court granted Plaintiffs' motion for a default judgment in this wage-and-hour suit (ECF No. 18), and this case was referred to me for an inquest on damages. For the reasons set forth below, I recommend that the Court enter judgment against Defendants as set forth in the Conclusion below.

## BACKGROUND

**I.    Established Facts As A Result Of Defendants' Default[1]**

**A.    Defendants**

Defendants owned and operated an eating establishment doing business as Haandi Restaurant ("Haandi"). (*See* Complaint, dated March 22, 2018 ("Compl."), ECF No. 4, ¶¶ 7-9.) Defendant New Lexington Corp. ("New Lexington") owned and operated Haandi. (*Id*. ¶ 7.) Defendants Artaza Ali ("Ali") and Shabbir Sial ("Sial") were "owners, officers, directors and/or managing agents" of Haandi and "participated in [its] day-to-day operations." (*Id*. ¶¶ 8-9.)

---

[1] In light of Defendants' default, the Court is required to accept all of Plaintiffs' allegations as true, except for those pertaining to damages. *See, e.g.*, *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

At all relevant times, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). (*Id*. ¶¶ 8-9, 50-51, 65.) During the most recent three years, Haandi had gross revenues in excess of $500,000. (*Id*. ¶¶ 52.) In addition, Haandi was an "enterprise engaged in commerce" within the meaning of the FLSA. (*Id*. ¶ 13.)

**B.   Plaintiffs**

**1.   Damian Mosso-Salazar**

Defendants employed Plaintiff Damian Mosso-Salazar ("Mosso-Salazar") at Haandi as a cook and cashier during the period 2010 through December 15, 2017. He worked sixty hours per week and was paid in cash. During the period 2012 through 2014, he was paid $500 per week. In 2015, his pay was increased to $550 per week. He never received from Defendants a statement of hours worked or wages paid. (*See* Mosso-Salazar Aff., ECF No. 24, ¶¶ 4-6.)

**2.   Efran Urbano**

Defendants employed Plaintiff Efran Urbano ("Urbano") at Haandi preparing foods, clearing the restaurant and washing dishes during the period 2007 through February 12, 2018. He worked sixty hours per week and was paid in cash. Prior to 2015, he was paid $550 per week; in 2015 and 2016, he was paid $600 per week; in 2017, he was paid $650 per week; and during the last three months of his employment, he was paid $700 per week. He never received from Defendants a statement of hours worked or wages paid. (*See* Urbano Aff., ECF No. 23, ¶¶ 4-6.)

**3.   Liborio Bravo Molina**

Defendants employed Plaintiff Liborio Bravo Molina ("Molina") at Haandi washing dishes, stocking supplies, cleaning the restaurant and assisting the cooks during the period 2001 to

present. He worked sixty hours per week and was paid weekly $400 in cash. In 2018, his weekly

pay increased to $425. He never received from Defendants a statement of hours worked or wages

paid. (*See* Molina Aff., ECF No. 23, ¶¶ 4-6.)

     **C.**   **Procedural History**

Plaintiffs Mosso-Salazar, Urbano and Molina filed their Complaint against Defendants on

March 20, 2018. (*See* ECF No. 1.)[2] The Complaint was served upon New Lexington, Ali and Sial on

April 6, 2018. (*See* ECF Nos. 7, 8 & 9.). After Defendants failed to appear in, and/or defend, this

action, the Clerk of Court entered a Certificate of Default on June 1, 2018. (ECF No. 12.)

Thereafter, on June 27, 2018, District Judge Daniels entered a Default Judgement against

Defendants, and referred this action to me for an inquest on damages. (*See* ECF No. 18.) On July

12, 2018. Plaintiffs' filed Proposed Findings of Fact and Conclusions of Law ("Proposed Findings

and Conclusions"). (*See* ECF No. 20.) Defendants' response was due no later than August 30, 2018

(*see* ECF No. 19), but no response was filed.

## DISCUSSION

**I.**   **Burden Of Proof**

Since a default judgment has been entered in Plaintiffs' favor, the only remaining issue is

the amount of damages to which they are entitled. Plaintiffs bear the burden of establishing their

entitlement to recovery and thus must substantiate their claims with evidence to prove the

extent of their damages. *See, e.g.*, *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d

155, 158 (2d Cir. 1992).

---

[2] Due to a filing error, the Complaint was re-filed on March 22, 2018. (*See* ECF No. 4.)

Although the Court may hold a hearing to assess damages, a hearing is not required when a sufficient basis on which to make a calculation exists. *See* Fed. R. Civ. P. 55(b)(2); *see also Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC,* 779 F.3d 182, 189 (2d Cir. 2015) (quoting *Action S.A. v. Marc Rich & Co*., 951 F.2d 504, 508 (2d Cir. 1991)*)*. Indeed, the Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, "as long as [the Court] ensured that there was a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp*., 109 F.3d 105, 111 (2d Cir. 1997) (citation omitted). Here, I rely on Plaintiffs' affidavits, which contain the required evidentiary basis, to determine whether the requested damages are reasonable.

An employee seeking to recover unpaid wages has the burden of proving that he performed work for which he was not properly compensated. *See Angamarca v. Pita Grill 7 Inc*., No. 11-CV-7777 (JGK) (JLC), 2012 WL 3578781, at *3 (S.D.N.Y. Aug. 2, 2012) (internal citation and quotations omitted). An employer is required to maintain "records of the persons employed by him of the wages, hours, and other conditions and practices of employment maintained by him . . . ." 29 U.S.C. § 211(c); *see also* 12 N.Y. Compilation Codes R. & Regs. ("NYCRR") § 142-2.6. However, absent such documentation, an employee may establish his right by relying on his recollection alone. An affidavit that sets forth the number of hours worked is sufficient. *Angamarca*, 2012 WL 3578781, at *3 (internal citation and quotations omitted).

Once an employee has presented his evidence, an employer may then "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Angamarca*, 2012

4

WL 3578781, at *4 (internal citations and quotations omitted). "If the employer fails to do so, the court may enter judgment in the employee's favor, using her recollection to determine damages, even though the result be only approximate." *Id.* Because Defendants have defaulted, Plaintiffs' representations as to the dates they worked will be credited and their damages calculated on that basis.

## II.   Statutes Of Limitations

### A.   Statutory Periods For Recovery Under The NYLL And The FLSA

Plaintiffs assert claims under both the NYLL and the FLSA. The statute of limitations is six years under the NYLL and two years under the FLSA. *See* NYLL § 663(3); 29 U.S.C. § 255(a). However, if an employer's acts are found to be "willful," the statute of limitations under the FLSA increases to three years. 29 U.S.C. § 255(a). Plaintiffs assert that the acts of Defendants were willful (*see*, *e.g.*, Compl. ¶¶ 8-9, 31), a fact the Court accepts as true given Defendants' default. *See, e.g.*, *Angamarca*, 2012 WL 3578781, at *4 (internal citations omitted). Therefore, the limitations period for the FLSA claims is three years.

### B.   Impact Of Longer Statutory Period Under The NYLL

Plaintiffs may not recover under both the NYLL and the FLSA for the same injury. Therefore, Plaintiffs will recover under the statute that provides them the greatest relief. *See Angamarca*, 2012 WL 3578781, at *4 (internal citations omitted). Since the Complaint was filed on March 20, 2018, March 20, 2015 is the earliest date for which Plaintiffs may recover under the FLSA. However, the earliest date for which Plaintiffs may recover under the NYLL is March 20, 2012.

III.    **Unpaid Minimum and Overtime Wages**

A.  **Legal Standards For Entitlement**

State and federal law require employers to pay to employees at least a minimum hourly rate for every hour they work. *See* 29 U.S.C. § 206(a); 12 NYCRR § 146-1.2. In March 2012, the minimum hourly wage in New York was $7.25. NYLL § 652 (incorporating federal minimum where higher). The minimum wage was increased to $8.00 per hour as of December 31, 2013; to $8.75 as of December 31, 2014; to $9.00 as of December 31, 2015; and to $11 as of December 31, 2016 (for employers of 11 or more employees in New York City). *Id*.

Under the FLSA, employees must be paid one-and-one half times their regular rate for each hour worked over forty (40) hours in a week. 29 U.S.C. § 207(a)(1). New York's rules on overtime explicitly incorporate those of the FLSA, and thus require pay at one-and-one-half times the regular normal rate for each hour over forty hours worked in a week. 12 N.Y.C.R.R. § 142-2.2.

B.  **Plaintiffs' Minimum and Overtime Wages**

Commencing in 2017, Plaintiff Molina was not paid the minimum wage. Moreover, none of the Plaintiffs was paid overtime at the rate of one-and-a-half times their regular rate. Rather, as set forth above, Plaintiffs received a fixed weekly rate throughout their employment with Defendants that did not vary depending on whether they had worked in excess of forty hours in a week.

Where employees receive a straight weekly salary, there is a rebuttable presumption under the FLSA that their salary covers 40 hours worked. Therefore, to determine the regular rate, their weekly salary is divided by 40 hours. *See Rosendo v. Everbrighten Inc.*, No. 13-CV-7256 (JGK) (FM), 2015 WL 1600057, at *3 (S.D.N.Y. April 7, 2015), *adopting Report and*

Recommendation, 2015 WL 4557147 (S.D.N.Y. July 28, 2015; *Moon v. Kwon*, 248 F. Supp. 2d 201, 207-08 (S.D.N.Y. 2002); *Giles v. City of New York*, 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999). Then, to determine their unpaid overtime, their regular hourly rate is multiplied by 1.5 to determine the overtime rate they should have received.

Plaintiffs included as Exhibits A through C to the Declaration of Peter Cooper spreadsheets reflecting the damages owed to Plaintiffs. (*See* ECF Nos. 21-1 to 21-3.)[3] The Court finds the calculations set forth in these exhibits with respect to overtime wages to be accurate, with four exceptions,[4] such that the following amounts are due to Plaintiffs for unpaid overtime wages:[5]

| Plaintiff Name | Unpaid Overtime Due |
|---|---|
| Mosso-Salazar | $117,900 |
| Urbano | $135,263 |
| Molina | $104,155 |

[3] At the Court's request, Plaintiffs' counsel also provided the Court with a native Excel version of the spreadsheet.

[4] The four exceptions are as follows: (1) In the spreadsheet for Mosso-Salazar, the weekly pay for him was listed as $500 for most of the period after January 2015. However, according to Mosso-Salazar's Affidavit, his weekly pay was $550 starting in 2015. (Mosso-Salazar Aff. ¶ 5.) The Court thus corrected the amount of overtime due to Mosso-Salazar by adjusting the "Actual Pay Received" column to $550 per week for every week beginning the first week in 2015; (2) The spreadsheet for Mosso-Salazar contains calculations for overtime wages owed for 52 weeks of 2017, in circumstances where, according to his affidavit he only worked 50 weeks. Thus, two weeks have been removed; (3) The spreadsheet for Urbano contains calculations for overtime wages owed for eight weeks of 2018, in circumstances where, according to his affidavit, he only worked 6 weeks, *i.e.*, until February 12, 2018. (Urbano Aff. ¶ 4.) Thus, two weeks have been removed; and (4) The spreadsheet for Urbano, in the "Totals" row, erroneously had the formula for the sum of the "O/T Owed" column end at row 315, which equates to December 31, 2017. The Court has calculated the overtime owed through the end of the sixth week (*i.e.*, row 322).

[5] The amounts set forth in this Report and Recommendation have been rounded to the nearest dollar.

IV.   **Liquidated Damages**

Although Plaintiffs note that they would be entitled to liquidated damages under both the FLSA and the NYLL, they only seek liquidated damages under the NYLL. (Proposed Findings and Conclusions at 7-8.)[6] The NYLL entitles Plaintiffs to liquidated damages since Defendants' wage violations were "willful." NYLL §§ 198(1-a), 663(1). NYLL § 663(1) provides that Plaintiffs are entitled to "liquidated damages equal to one hundred percent of the total of such underpayments found to be due."[7] Plaintiffs are entitled to liquidated damages on the total amounts of unpaid overtime wages under the NYLL in amounts equaling 100% of the total amounts due. Thus, the Court finds that Plaintiffs are entitled to liquidated damages under the NYLL in the amounts set forth in the chart above, effectively doubling the amounts.

V.   **Wage Theft Protection Act Damages**

Plaintiffs seek to recover damages for Defendants' failure to provide regular wage statements and annual wage notices as required by New York's Wage Theft Prevention Act ("WTPA"), an amendment to the NYLL effective April 9, 2011. (Proposed Findings and Conclusions at 8.) The WTPA requires employers to

> furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.... [T]he statement shall include the

---

[6] In *Chowdhury v. Hamza Express Food Corp.*, 666 Fed. Appx. 59 (2d Cir. 2016), a non-precedential panel opinion of the Second Circuit refused to permit an award of liquidated damages under both the FLSA and the NYLL for the same violation, because it would amount to "double recovery." *Id*. at 60-61. Plaintiffs are not seeking such a double recovery in this case.

[7] The statute was amended, effective April 9, 2011, to raise the amount of liquidated damages from 25% to 100% of unpaid wages. *See* 2010 N.Y. Sess. Laws, ch. 564 (S.8380) (McKinney).

regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.

N.Y. Labor Law § 195(3). Prior to February 27, 2015, the WTPA entitled employees to recover statutory damages for violations of the wage statement requirement of $100 per workweek, not to exceed $2,500. *See* 2010 N.Y. Laws ch. 564 § 7, amending N.Y. Labor Law § 198(1-d). As of February 27, 2015, the WTPA increased these penalties to $250 per workday, not to exceed $5,000. N.Y. Labor Law § 198(1-d).

As set forth above, Plaintiffs never were given any wage statements throughout their employment. Because each of the Plaintiffs worked more than 20 weeks after February 27, 2015, each of them is entitled to receive the $5,000 payment under the WTPA.

## VI.    Pre–Judgment Interest

Plaintiffs seek pre-judgment interest on their state claims for unpaid overtime. Plaintiffs are entitled under New York law to pre-judgment interest at the statutory rate of 9% per year. *See* N.Y. C.P.L.R. §§ 5001, 5004. Pre-judgment interest applies only to the amount of compensatory damages and excludes the amount of liquidated damages. *See Angamarca*, 2012 WL 3578781, at *9 (internal citation omitted). Where unpaid wages "were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). I recommend that pre-judgment interest be calculated by multiplying the principal amount due under the NYLL by the interest rate by the time period — from a singular, midpoint date — up until and including the date judgment is entered. *See Angamarca*, 2012 WL 3578781, at *9 (internal citation omitted).

9

Since each of the Plaintiffs worked for different periods of time[8] and are due differing amounts of money, prejudgment interest needs to be calculated separately by Plaintiff. The chart below reflects the amounts per Plaintiff on which 9% prejudgment interest is due (*i.e.*, the sum of the unpaid overtime wages), as well as a recommended mid-point date from which the interest should be calculated, up through the date the judgment is entered:

| Plaintiff Name | Relevant Period | Midpoint Date | Amount Due |
|---|---|---|---|
| Mosso-Salazar | 3/20/2012-12/15/2017 | 1/31/2015 | $117,900 |
| Urbano | 3/20/2012-2/12/2018 | 3/2/2015 | $135,263 |
| Molina | 3/20/2012-7/5/2018 | 5/13/2015 | $104,155 |

## VII.   Attorneys' Fees and Costs

Plaintiffs seek $11,290 in attorneys' fees and costs pursuant to 29 U.S.C. § 216(b) and NYLL §§ 198(1-a), 663(1). (Cooper Decl. ¶ 7 & Ex. D.) It is the Court's duty to determine if the attorneys' fees sought are reasonable. *See Angamarca*, 2012 WL 3578781, at *10.

### A.   Reasonable Hourly Rate

District courts have broad discretion to determine a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). A reasonable hourly rate is "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Bergerson v. N.Y. State Office of Mental Health*, 652 F.3d 277, 289-90 (2d Cir. 2011) (internal quotation marks and citations omitted). The reasonable rate is ordinarily determined by

---

[8] The beginning date of the relevant period in the chart below is the earliest date upon which Plaintiffs can obtain recovery under the NYLL, *i.e.*, March 20, 2012. (*See* Discussion Section II.B., *supra*.) The end dates are taken from the Plaintiffs' Affidavits (ECF Nos. 22-24) and/or the spreadsheets annexed as Exhibits A to C of the Cooper Declaration. (ECF Nos. 21-1 to 21-3.)

"a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel," which may include taking "judicial notice of the rates awarded in prior cases." *Farbotko v. Clinton Cnty.*, 433 F.3d 204, 209 (2d Cir. 2005).

The law firm of Cilenti & Cooper, PLLC represents Plaintiffs. Plaintiffs seek to recover fees for work performed by Peter Cooper. (*See* ECF No. 21-4.) Plaintiffs seek reimbursement for his work at a rate of $400 per hour. (*See id*.) The Court takes judicial notice that Mr. Cooper is the founding partner of Cilenti & Cooper, and is a 1995 graduate of Vermont Law School, where he served on the *Vermont Law Review*.[9] The Court also notes Mr. Cooper's focus on employment matters. (*See* Proposed Findings and Conclusions at 10.) Having considered all the facts and circumstances, the Court finds that Mr. Cooper's hourly rate is reasonable. *See Lujuan v. JPG LLC*, 18-CV-0916 (KBF), 2018 WL 3353060, at *2 (S.D.N.Y. June 6, 2018) ("Lead attorneys in this district typically charge between $300 and $400 per hour for wage-and-hour cases."(citations omitted)).

**B.      Reasonable Hours Expended**

Having determined that the hourly billing rate for Mr. Cooper is reasonable, the Court next examines the hours reasonably expended. *See Angamarca*, 2012 WL 3578781, at *12. The Court has examined the contemporaneous time records that identify the hours expended on a task, "with a view to the value of the work product of the specific expenditures to the client's case." *See Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997) (citation omitted).

Based upon the Court's review, it is recommended that an award be given for the 27.3 hours billed by Mr. Cooper, as the number of hours billed seems reasonable in the circumstances.

---

[9] *See* https://wagefirm.com/peter-h-cooper/.

In this regard, the Court notes that Mr. Cooper did not bill for every task that he performed. (*See* Cooper Decl. ¶ 7.)

      **C.**    <u>**Costs**</u>

Lastly, Plaintiff seeks recovery of the $400 court filing fee and $130 in fees for executing service of process to the Defendants. (*See* ECF No. 21-4 at 3.) Pursuant to NYLL § 663(1), an employee who prevails in a wage-and-hour action is entitled to recover costs. NYLL § 663(1). The Court has reviewed Plaintiffs' costs and determined that they are reasonable. Therefore, the Court should award Plaintiffs $530 in costs.

**VIII.**    <u>**Joint and Several Liability**</u>

Plaintiffs allege that Defendants Ali and Sial were "owners, officers, directors and/or managing agents" of Haandi and "participated in [its] day-to-day operations." (Complaint ¶¶ 8-9.) Under both the FLSA and the NYLL, each of them is considered an employer and thus is individually liable along with New Lexington. *See* 29 U.S.C. § 203(d); N.Y.L.L. §§ 2(5)-(6). Because Defendants defaulted, they cannot now challenge liability, and thus are held jointly and severally liable. *See Li v. Kai Xiang Dong*, No. 15-CV-7554 (GBD) (AJP), 2017 WL 892611, at *22 (S.D.N.Y. March 7, 2017) (citations omitted).

**CONCLUSION**

For the foregoing reasons, I recommend that the Court enter judgment in favor of each

of the Plaintiffs' against Defendants as set forth in the chart below:

| Plaintiff Name | Minimum Wage | Overtime | Liquidated Damages | WTPA | Totals |
|---|---|---|---|---|---|
| Mosso-Salazar | -- | $117,900 | $117,900 | $5,000 | $240,800 |
| Urbano | -- | $135,263 | $135,263 | $5,000 | $275,526 |
| Molina | $2,785 | $101,370 | $104,155 | $5,000 | $213,310 |

I further recommend as follows: (1) Pre-judgment interest should be awarded as set forth in

section VI above; and (2) Plaintiffs should be awarded $11,290 in attorneys' fees and costs.

DATED:      New York, New York
            September 4, 2018


_____
**STEWART D. AARON**
**United States Magistrate Judge**


\*              \*              \*


**NOTICE OF PROCEDURE FOR FILING OBJECTIONS**
**TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service

of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1)

and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding

three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party

may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Daniels.

**THE FAILURE TO FILE THESE TIMELY OBJECTIONS WILL RESULT IN A WAIVER OF THOSE OBJECTIONS FOR PURPOSES OF APPEAL.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).

Chambers shall mail copies of this Report and Recommendation to Defendants at the addresses set forth in Plaintiffs' Affidavits of Service (ECF Nos. 7-9).